IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARK CARTER, | § | |
| | § | |
| v. | § | NO.  A-06-CA-378 LY |
| | § | |
| JO ANNE B. BARNHART, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATED MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff's Complaint (Clerk's Doc. No. 3). The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. §636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I. INTRODUCTION

On May 24, 2006, Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff disability benefits. Plaintiff applied for Supplemental Security Income Benefits ("SSI") and Disability Insurance Benefits ("DIB") on March 25, 2003, alleging inability to work due to a seizure/blackout disorder.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 6, 2004.  The ALJ found Plaintiff not disabled in a decision issued May 3, 2005.  Plaintiff appealed to the Appeals Council and submitted additional evidence for review.  The Appeals Council denied Plaintiff's request for review of the

ALJ's decision on March 21, 2006. On May 19, 2006, Plaintiff brought this action, raising two issues: (1) the ALJ improperly discounted Plaintiff's credibility; and (2) the ALJ improperly discounted the evidence from treating and examining physicians. The Court concludes that the ALJ made errors which require the remand of the case for additional evidence and review.

## II. ANALYSIS

The undisputed evidence presented to the Commissioner demonstrates that Plaintiff has not engaged in substantial work activity since March 17, 2003. The evidence is also uncontested that Plaintiff suffers from a severe seizure disorder that causes him to blackout and lose awareness. While there was no dispute that Plaintiff does in fact suffer from the disorder, the ALJ found that the condition is controllable by medication such that the Plaintiff is employable. Whether this in fact supported by the record is the crux of the case presented on appeal. Having reviewed the briefs and the record, the Court concludes that this case must be remanded to the Commissioner because the ALJ made several findings directly contrary to the evidence, and those conclusions were material to the ALJ's ultimate determination that Plaintiff was not disabled.

Specifically, the ALJ gave "very little if any weight" to the conclusions of Dr. Colin R. Bailey, stating that there was no evidence that Dr. Bailey ever treated or examined the Plaintiff. Tr. 29. In fact, the record demonstrates that Dr. Bailey saw Plaintiff at his office for a seizure disorder on September 16, 2004, Tr. 229-230, and also saw him immediately following a seizure on December 16, 2004, at the Hill Regional Hospital. Dr. Bailey ultimately admitted Plaintiff to the hospital after the Plaintiff had what Dr. Bailey described as a grand mal seizure in the hospital parking lot upon discharge from the emergency room. Tr. 237-239. The first seizure (which led to the emergency room visit) is also described in the records as a grand mal seizure during which the

2

Defendant bit his tongue. Tr. 237. It is clear from both the September and December records that Dr. Bailey examined and treated the Defendant, and was familiar with his medical history, and thus should have been considered a treating physician.[1]

There is a well-developed body of case law and regulations detailing the situations under which a treating physician's opinions may be rejected. The general rule is that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."[2] *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). If the ALJ declines to give the treating physician's opinions controlling weight, "absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)." *Newton*, 209 F.3d at 453. The Commission's own rulings echo these principles, and hold that even when treating source medical opinion is not entitled to controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight." SSR 96-2p. The ALJ made no analysis whatsoever of the regulatory factors in discounting Dr. Bailey's opinions, due to his erroneous

---

[1] The regulations break medical source opinions down into three general categories: non-examining, non-treating, and treating. 20 C.F.R. §§ 404.1502, 416.902. Medical sources who have had an "ongoing treatment relationship" with the claimant are regarded as treating sources. *Id.*

[2] 20 C.F.R. § 404.1527(d)(2) sets out six factors to be taken into account in considering the weight to give a treating physician's opinions.

conclusion that Bailey had never treated or examined the Plaintiff.  Further, the ALJ gave no deference whatsoever to Dr. Bailey's opinions.  This was error.

Second, the ALJ found that the Plaintiff's testimony was "generally not credible," and he thus gave it "little weight."  Tr. 29.  He based this on his conclusion that the Defendant's condition was "well controlled for two years with Carbatrol," and that while Plaintiff contended he had experienced increased seizure activity since 2003, "there is no evidence that he has . . . required routine medical care or emergency room medical care for exacerbated symptoms."  *Id.*  Both of these findings are contradicted by the record.  The record demonstrates that the Plaintiff was taking his medication when he "totaled" two work vehicles in a five month period in late 2002 to early 2003.  Tr. 170, 246, 252.  The Court would not consider a seizure disorder "well controlled" by medication if the individual has two car wrecks in a five month period despite taking his medication.  As for the claim that the Defendant did not require routine or emergency medical care after 2003, that too is directly contrary to the evidence.  The Plaintiff visited the emergency room on December 16, 2004, after suffering a grand mal seizure, and was admitted to the hospital when he suffered a second such seizure in the parking lot.  The doctor who treated the Plaintiff in this instance had also seen him earlier in 2004 for seizures.  The record evidence shows that Plaintiff went to the doctor as a referral from the pharmacist who owned a pharmacy where Plaintiff was applying for assistance in paying for medication through the Pharmaceutical Assistance Program.  Tr. 154. While at the pharmacy, the Plaintiff had a seizure episode witnessed by the pharmacist, and the pharmacist referred Plaintiff to Dr. Bailey, *id.*, who saw Plaintiff that same day, Tr. 229-230.  This same evidence also undermines the ALJ's determination that Plaintiff was not making efforts to obtain medical care available to an indigent patient.

All of these findings were material to the ALJ's determination that Plaintiff is not disabled. The vocational expert opined that if Plaintiff had seizures daily, he would be unable to work, whereas if he had them only twice a week, he would be employable. Tr. 270, 266. The ALJ based his overall conclusion of non-disability on the finding that the Plaintiff experienced no more than two episodes per week. Tr. 31, 33. The primary evidence in the record regarding the frequency of the seizures came from Plaintiff and his wife. When asked by his counsel at the May 6, 2004 hearing how often he had seizures, Plaintiff testified that, "Again, I have no recollection of when or how often but according to my wife and my mother and and [sic] other people it's almost daily." Tr. 247-48. Plaintiff's wife testified when the Plaintiff is on medication he has "[s]ometimes two, two a week and sometimes maybe more." Tr. 254. To reach his conclusion, the ALJ disregarded the Plaintiff's testimony (and apparently relied on the low end of the wife's estimate). Given that the explanation offered by the ALJ for discounting the Plaintiff's testimony is not supported by the record, the ALJ's error in this regard affected the outcome of the case.[3]

Likewise, the error in discounting Dr. Bailey's opinion appears to have affected the outcome. In a November 23, 2004 letter, Dr. Bailey stated:

> Mr. Mark Carter has a history of seizure disorder diagnosed by Dr Randy Gardell in 1999. He has been unable to work due to his seizures. He has been unable to afford medications or even neurologic subspecialty care. Any assistance which could be provided to Mr. Carter would be gratefully appreciated.

---

[3]The Court notes that the record also suggests no motivation for Plaintiff to be fabricating his disorder. Plaintiff was gainfully employed in a skilled position for several years, and lost that job because of episodes leading to car accidents. He also suffered a seizure while leading a class. Plaintiff earned substantially more in that job than he would from disability payments, and would clearly be better off working than faking an illness. There is also substantial evidence in the record from people who have witnessed the episodes.

Tr. 231. Presumably, what the ALJ found controversial in this note is the sentence "He has been unable to work due to his seizures," which the ALJ apparently treated as a finding by Dr. Bailey regarding the Plaintiff's residual functional capacity. To the extent this is what Dr. Bailey intended,[4] the ALJ gave it "little or no weight." Tr. 29. At the same time, he have "equal weight" to three non-examining, non-treating doctors' opinions regarding Plaintiff's residual functional capacity. Tr. 30. Had the ALJ not discounted Dr. Bailey's opinion, it could clearly have impacted the ALJ's opinion regarding whether Carter was disabled. At a minimum, Dr. Bailey's conclusions relating to his treatment of the Plaintiff from September through December 2004 corroborate the Plaintiff's testimony, and discounting these findings also affected the ALJ's overall conclusions as well.[5]

It is clear that the Plaintiff's disorder is an unusual one, as varying doctors, including two neurologists, have been unable to pinpoint precisely the nature of the seizure disorder. Thus, this case is quite different from a case in which there is a medication proven to treat a disorder, such as diabetes, and the plaintiff is simply not taking his medication. Given the strange nature of the Plaintiff's episodes, the ALJ should have obtained a medical opinion from an expert (based upon a complete examination and medical workup) regarding the nature of the disorder, and the ability for it to be controlled by medication. The ALJ has a duty to develop the record fully and fairly relating

---

[4] It could well be that Dr. Bailey was merely repeating what the Plaintiff had told him in his office visits.

[5] Even though the question of residual functional capacity is reserved to the Commissioner, that does not mean that the ALJ may ignore a treating physician's opinions on that issue. With respect to residual functional capacity assessments and medical source statements, SSR 96-5p provides that "'[a]djudicators must weigh medical source statements under the rules set out in 20 C.F.R. § 404.1527 . . . , providing appropriate explanations for accepting or rejecting such opinions.'" *Id.*; *see also* 20 C.F.R. § 416.927. SSR 96-5p additionally provides that "[i]n evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 C.F.R. 404.1527(d) and 416.927(d)."

to an applicant's claim for disability benefits. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *see also Newton*, 209 F.3d at 457-58. In this case it appears that only with additional evidence can it properly be determined whether the Plaintiff's condition is disabling. Because of the errors discussed above, and in order for the ALJ to more fully develop the record, it is **RECOMMENDED** that this case be remanded to the Commissioner.

Upon remand, it is **RECOMMENDED** the ALJ be ordered to obtain a consulting specialist's opinion, after a full and complete physical examination, regarding the nature of the Plaintiff's disorder, its ability to be controlled by medication, and its impact on the Plaintiff's residual functional capacity. It is further **RECOMMENDED** that the ALJ be ordered to request clarification or additional information from Carter's treating physicians, including their completion of a "Medical Source Statement of Ability to do Work-Related Activities" form, as required by 20 C.F.R. § 404.1512(d) and SSR 96-2p. It is further **RECOMMENDED** that the ALJ be ordered to reconsider his decision to give no weight to Dr. Bailey's opinions, and in doing so to classify Dr. Bailey as a treating physician. Finally, it is **RECOMMENDED** that the ALJ be directed to reconsider his decision to give the Plaintiff's testimony little weight, and to take into account the matters discussed above.

### III. RECOMMENDATION

Based on the above, the Magistrate Court **RECOMMENDS** that the District Court **REVERSE** the decision of the Social Security Commissioner, and remand the case for further proceedings consistent with the foregoing.

## VI. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 15th day of December, 2006.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE